GUIDRY, Judge.
Plaintiffs, Milton Loyden, Sr. and Liza Loyden, bring this action seeking recovery for the wrongful death of their son, Milton Loyden, Jr. This suit arises out of an incident in which the decedent was shot and killed by Captain Ancel Irby, an off-duty police officer, who was also employed at the time as a security guard for defendant, J. C. Penney Company, Inc. (hereafter referred to as Penney). Also made defendants are Maryland Casualty Company (hereafter referred to as Maryland) and American Home Assurance Company (hereafter referred to as American), the public liability insurer of the City of Alexandria and professional liability insurer of the Alexandria Police Department, respectively.
Penney filed answer, denying liability to plaintiffs, contending that Captain Irby was acting outside the course and scope of his employment with Penney while he was attempting to place the decedent under lawful arrest, and further alleging contributory negligence and/or assumption of risk on the part of the decedent. Penney also filed a third party demand against Maryland and American, seeking indemnification or contribution.
*757 Defendants, Maryland and American, answered the' above demands, alleging the decedent’s contributory negligence and/or assumption of risk, and further denied coverage under their respective policies, contending that at the time of the accident, Captain Irby was acting in the course and scope of his employment as a security guard with Penney.
In addition, Maryland filed a third party demand against American seeking indemnification under the theory of respondeat superior.
Plaintiffs requested a trial by jury. After trial on the merits, the jury, through special interrogatories, returned a verdict finding that Captain Irby did not intentionally shoot and kill the decedent, nor was he guilty of negligence which was a proximate cause of the death of the decedent. Accordingly, judgment was rendered by the trial court in favor of all defendants and against plaintiffs, rejecting the plaintiffs’ demands at their costs. In accordance with the jury’s finding of no liability on the part of any of the defendants, the judgment also dismissed all third party demands.
Plaintiffs’ motion for a new trial was denied, and plaintiffs have appealed. Penney also perfected an appeal in order to preserve its rights in its third party demand against Maryland and American. Maryland answered plaintiffs’ appeal in order to protect its rights in its third party demand against American in the event of a reversal of the trial court’s judgment.
The issues presented are whether Captain Irby intentionally or negligently caused the death of plaintiffs’ decedent and, if so, which of the defendants are legally responsible for his acts.
The facts giving rise to this litigation may be summarized as follows:
Ancel Irby is a police officer, employed by the Alexandria Police Department at the rank of captain. In addition to his official duties with the City, Captain Irby also worked part-time during his off-duty hours as a security guard for the Penney retail outlet located in the Alexandria Mall. On the evening of December 11, 1975, Captain Irby was working at the Penney store, dressed in civilian clothing. He was working with Deputy Betty Seiver of the Rap-ides Parish Sheriff’s Department, who was also employed by Penney as a security guard. On that same evening, they observed a young lady, later identified as Sharon Newman, walking out of the store with a coat folded over her arms. Penney store policy required that all items be placed in a bag when purchased, so it appeared that she had taken the coat without paying for it. Deputy Seiver followed her while Captain Irby searched for an empty coat hanger remaining on the rack which would help verify that the coat had not been paid for. The empty hanger was found, and Deputy Seiver pointed out to Captain Irby the general area of the vehicle to which the young lady had gone upon leaving the store. Captain Irby located the car, which was then occupied by Sharon Newman and the decedent, and approached it with the intention of having Miss Newman accompany him back into the store.
Captain Irby noted the license number and then approached the car (a four-door sedan) from the left rear. Sharon Newman was seated in the rear seat on the driver’s side with the door closed. The decedent was seated in the front seat behind the steering wheel, with the front door open and his legs outside of the vehicle. Captain Irby identified himself as an officer of the Alexandria Police Department and also as being with J. C. Penney Security. He showed Miss Newman his police identification card and advised her that he wanted to speak to her in reference to the jacket she had on her lap.
After a short conversation between Captain Irby and Miss Newman, the decedent stepped out of the car and began arguing with Captain Irby. Captain Irby reached into the car between the door post and the front seat, retrieved the coat from the floorboard and flipped it onto the top of the car. Miss Newman then stepped out of the car and Captain Irby pulled his revolver from its concealed position underneath his clothing. The decedent took a step towards *758 Captain Irby who advised him that he was under arrest for interfering with an officer. The decedent then told Miss Newman to run — “he can’t get us both,” and got back into his car, attempting to place his keys in the ignition switch. Captain Irby stepped alongside the decedent, preventing him from closing the door. He attempted to take the keys away from the decedent with his left hand, while holding his revolver in his right hand. The decedent, after unsuccessfully trying to insert the keys in the ignition, dropped the keys and grabbed Captain .Irby’s left wrist, pulling him into the car. It was at this time that Captain Irby’s revolver discharged, striking the decedent in the neck.
Plaintiffs contend that Captain Irby intentionally shot and killed the decedent without any legally justifiable cause, pointing out that his actions in drawing, aiming and firing his revolver were all intentional acts. Plaintiffs further point out that the gun used by Captain Irby was a 357 Magnum. They point to Captain Irby’s deposition in which he stated that it would have taken 9 to 15 pounds of pressure to fire the revolver in the “double action” mode as was the case here. In support of their contentions, plaintiffs refer to LSA-R.S. 14:20[1] and numerous cases as standing for the proposition that one may not take a human life in an attempt to prevent the commission of a misdemeanor. Further, plaintiffs contend that the decedent had not committed any culpable offense and was merely attempting to escape from the zone of danger and had not done anything to put Captain Irby under an apprehension of death or bodily harm.
While the action of Captain Irby in drawing his revolver was an intentional act, the record amply supports a finding that the actual discharge of the weapon was accidental.
Captain Irby testified that he was attempting to prevent the decedent from leaving the scene by grabbing for his keys as the decedent tried to place them in the ignition. Captain Irby’s testimony, that his pistol accidentally discharged when the decedent pulled him into the car, was corroborated by the testimony of Dr. Norman, the pathologist who performed an autopsy on the decedent. He described the entrance wound as being in the lower left neck, with the trajectory of the bullet going upward, severing the spinal column. The bullet was recovered just beneath the skin about two inches below the prominence on the back of the head. Dr. Norman carefully described this and demonstrated the entrance wound and the position in which the bullet rested to the jury by using his own torso as a model. He testified that the gun would have had to have been almost against the chest wall, with the barrel pointing upwards, in order to attain the trajectory presented here. Dr. Norman further testified that the trajectory of the bullet would be consistent with Captain Irby’s testimony.
Miss Waverly Hickman, an eyewitness who was seated in an automobile parked adjacent to the decedent’s car testified that she observed the decedent grab Captain Irby’s hand and pull him into the car, and heard the gun discharge at almost the same time.
Mrs. Gloria Schultz, another eye witness to the shooting, testified that she observed the decedent sitting in the car with the car door open and Captain Irby standing on the driver’s side facing in towards the car. As she passed near the car, she heard Captain Irby telling the decedent, “Look, I’m trying *759 to do this in a nice way. Get out of the car, you are under arrest.” She testified that she heard Captain Irby repeat the statement several times in a soft tone of voice, while the decedent was swearing and using loud profanity. She continued walking beyond the car, but turned around and looked back at the car when the swearing and cursing got louder. Immediately after she turned, she observed Captain Irby jump back. She saw his hand come back and simultaneously heard the gun go off.
Several witnesses who were in the immediate area of the shooting testified that Captain Irby made exclamations to the effect that his gun had accidently discharged.
The evidence convinces us, as it apparently did the jury, that Captain Irby did not intentionally shoot the decedent. We thus find the cases cited by plaintiffs to be inapplicable to the case at bar as they involve circumstances where firearms were intentionally discharged.
We now turn to plaintiffs’ contentions that Captain Irby’s use or offer to use fatal force under the circumstances constituted negligence. Plaintiffs contend that Captain Irby did not use the care and prudence of a trained and experienced law enforcement officer, policeman and security guard under the circumstances. Plaintiffs argue that the use or the offer to use fatal force after Captain Irby had regained possession of the coat was negligence, in that Captain Irby, as a reasonable and prudent man, could foresee that the offer to use fatal force might result in death or great bodily harm.
Captain Irby testified that the decedent got out of the car as he was attempting to talk with Miss Newman about the coat which she then had on her lap. The decedent was cursing with the tone of his voice getting louder. Captain Irby advised the decedent that he didn’t want to talk to him, that he was only interested in Miss Newman and the coat. Captain Irby identified himself to the decedent as a police officer and security guard. As the decedent moved towards him, Miss Newman stepped from the back seat of the car. Captain Irby testified that it was at this point that he drew his revolver. He explained that there was a van parked to his immediate rear, with a suspect and a companion advancing on him. He testified that he had been in similar circumstances before and had received bodily injury. '
Whether or not Captain Irby acted reasonably under the circumstances is a question of fact. Accordingly, the findings of the trier of fact will not be disturbed in the absence of manifest error. Canter v. Koehring, 283 So.2d 716 (La.1973).
Captain Irby had probable cause to arrest Miss Newman in that he had observed her apparently shoplifting a coat from the Penney store. While attempting to apprehend Miss Newman, he suddenly found himself caught between the suspect and a male companion, with his freedom of movement severely restricted. We believe that Captain Irby was justified in drawing his revolver when confronted with these circumstances. A police officer is justified in drawing his weapon in order to protect himself from violence and to enforce an arrest. Greening v. Hill, 221 So.2d 261 (La. App. 2nd Cir. 1969, writ refused).
When the decedent took a step towards Captain Irby, he was advised he was under arrest for interfering with an officer. LSA-R.S. 14:108. Captain Irby felt that the decedent was interfering with his attempts to have Miss Newman accompany him back into the store. Plaintiffs contend that the decedent had not committed any offense, but had merely questioned the authority of Captain Irby to search his car without a warrant. We do not consider the issue of whether or not the decedent had actually committed a violation of R.S. 14:108. Suffice it to say, we find that Captain Irby did have probable cause at this time to arrest the decedent.
Plaintiffs correctly contend that Captain Irby would not have been justified in using deadly force to apprehend the decedent at this point. Sauls v. Hutto, D.C.1969, 304 F.Supp. 124. However, as pointed out above, the record reflects that the discharge of Captain Irby’s revolver was accidental *760 and was not an intentional use of deadly force.
In attempting to effectuate the arrest of decedent, Captain Irby was entitled to use reasonable force to restrain the decedent from leaving the scene. LSA-C.Cr.P. Article 220; Malone v. Fields, 335 So.2d 538 (La.App. 2nd Cir. 1976); Greening v. Hill, supra. In the instant case, Captain Irby sought to restrain the decedent by grabbing for his keys as he was attempting to start his engine. This was a reasonable use of force under the circumstances.
The record in this case' clearly supports a finding that Captain Irby was attempting to enforce a lawful arrest; the decedent was resisting arrest; Captain Irby was justified in drawing his revolver when he did; the revolver accidentally discharged; and, the proximate cause of the weapon’s discharge was the decedent’s own actions in pulling Captain Irby into the car. Considering these findings plaintiffs are not entitled to recover civil damages. Greening v. Hill, supra; Bernstine v. City of Natchitoches, 335 So.2d 51 (La.App. 3rd Cir. 1976).
Finally, plaintiffs contend that the trial court committed reversible error in instructing the jury with the following charge:
“Resisting an officer is the intentional opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest when the offender knows or has reason to know that the person arresting is acting in his official capacity. A person shall submit peaceably to a lawful arrest. A person making a lawful arrest may use reasonable force to effect the arrest and detention and also to overcome any resistance or threatened resistance of the person being arrested or detained. Upon the suspect’s refusal to submit to a lawful arrest, a peace officer has a right to draw his revolver to protect himself from violence and to enforce the arrest.
In determining whether Captain Ancel Irby was or was not negligent, you are further instructed that where a person reasonably believes that he is threatened with bodily harm he may use whatever force appears to be reasonably necessary to protect against the threatened injury.”
We find no merit in this contention. The jury charge as set forth above is a correct statement of the statutory and jurisprudential law of this state. See LSA-R.S. 14:20; LSA-R.S. 14:108; LSA-C.Cr.P. Article 220; Greening v. Hill, supra; Bernstine v. City of Natchitoches, supra. Evidence adduced at trial warranted the reading of this instruction to the jury.
For the above and foregoing reasons, the judgment of the District Court is affirmed.
AFFIRMED.
WATSON, J., concurs and assigns written reasons.

. At the time of the decedent’s death, LSA-R.S. 14:20 read as follows:
“A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger; or
(2) When committed, for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm, by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to exite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.”